# Appendix

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued March 9, 2007 Decided April 6, 2007

No. 06-5030

FRANCES L. GREENHILL,
APPELLANT

v.

MARGARET SPELLINGS,
SECRETARY, U.S. DEPARTMENT OF EDUCATION,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 05cv01100)

*Daniel Moar*, Student Counsel, argued the cause for *amicus curiae* in support of appellant. With him on the briefs were *Stephen H. Goldblatt*, Director, and *Michael Huang*, Student Counsel.

*Frances L. Greenhill*, pro se, was on the briefs for appellant.

*Megan L. Rose*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S.

Attorney. *Michael J. Ryan*, Assistant U.S. Attorney, entered an appearance.

Before: GARLAND and BROWN, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

WILLIAMS, *Senior Circuit Judge*: In 2002 Frances Greenhill received a letter from the Department of Justice rescinding an offer of employment. This rescission was the result of a negative reference, which Greenhill claims came from her former supervisor at the Department of Education in contravention of a settlement agreement. Plaintiff brought suit in district court, seeking $210,000 in damages and some equitable remedies. The district court concluded that the cause of action was within the exclusive jurisdiction of the Court of Federal Claims. We agree. We remand the case to the district court with instructions to transfer the case to that court.

* * *

Greenhill, an employee of the Department of Education ("DOE"), executed a settlement agreement with the Department in 1999 to resolve complaints of age and race discrimination that she had filed with the Equal Employment Opportunity Commission ("EEOC"). According to the agreement, DOE was to remove certain documents from Greenhill's record and to direct to a specified person all requests for employment references on Greenhill. In February 2002, Greenhill received an offer of employment from the Department of Justice ("DOJ"), pending a background investigation. But on June 21, 2002 DOJ wrote to Greenhill rescinding the offer, citing a negative reference from DOE.

Because Greenhill believed that DOE had breached the 1999 settlement, she consulted with Equal Employment Specialist Cathy Hawkins during the summer of 2002. The 1999 agreement required that any complaint alleging breach must be filed "in writing within thirty (30) calendar days of the date [Greenhill] knew or should have known of the alleged noncompliance." Joint Appendix ("J.A.") 41. Plaintiff in fact didn't submit a written complaint until July 30, 2003, more than a year after she learned of the bad reference. The Equal Employment Opportunity office at DOE initially accepted Greenhill's complaint for formal processing but on August 17, 2004 dismissed it for lack of timeliness. The EEOC affirmed the dismissal and sent Greenhill a right-to-sue letter. Plaintiff then filed a timely pro se complaint in district court seeking $210,000 in damages and various forms of equitable relief, including reinstatement to her position at DOE, restoration of leave, and reinstatement into retirement and savings plans. Noting that the Court of Federal Claims has exclusive jurisdiction over all contract claims against the federal government in excess of $10,000, the court dismissed the cause of action without prejudice for want of jurisdiction.

* * *

The Tucker Act provides that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Although the Little Tucker Act gives district courts jurisdiction over certain similar claims against the federal government, the jurisdiction of the Court of Federal Claims is exclusive when a plaintiff seeks more than $10,000 in damages. See 28 U.S.C. § 1346(a); *Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986).

As we said, Greenhill's complaint requested $210,000 as well as equitable relief. Although the complaint did not explicitly denominate the $210,000 claim as one for contract damages (as opposed, for example, to back pay under Title VII, see *Rochon v. Gonzales*, 438 F.3d 1211, 1216 (D.C. Cir. 2006)), neither Greenhill nor amicus argues that the amount sought is anything other than contract damages. Thus the complaint on its face appears to be one over which the Court of Federal Claims has exclusive jurisdiction.

On appeal, Greenhill has benefited from the able advocacy of amicus, who offers several theories to avoid the jurisdictional limitation. Close inspection, though, reveals none of them to be availing. First, amicus argues that the district court failed to recognize a Title VII retaliation claim in Greenhill's complaint or, alternatively, in her motion for the court to reconsider its dismissal of the complaint. The district court would have had jurisdiction over a retaliation claim and, according to amicus's theory, could then have exercised supplemental jurisdiction over the contract claim. See *Rochon*, 438 F.3d at 1215.

The Supreme Court has stated that pro se complaints, "however inartfully pleaded," are to be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). We have also permitted courts to consider supplemental material filed by a pro se litigant in order to clarify the precise claims being urged. See *Anyanwutaku v. Moore*, 151 F.3d 1053, 1054 (D.C. Cir. 1998). But even under these liberal pleading standards Greenhill has not shown that a Title VII retaliation claim was before the district court.

Essentially, Greenhill argues that the negative evaluation supplied to DOJ by her former supervisor, Mary Brayboy, is indicative of animus toward Greenhill and thus "supports an

inference of retaliation." Amicus's Br. at 28. Although providing a negative employment reference may be consistent with retaliatory behavior, the district court here could not reasonably be expected to discern a separate retaliation claim. The complaint makes no reference to retaliation, and the negative statements by Greenhill's former supervisor, without more, are not self-evidently retaliatory.

Amicus also points to two statements in the record that supposedly should have placed the district court on notice that Greenhill sought to pursue a retaliation claim. In an August 24, 2004 letter to the EEOC, Greenhill wrote that "Ms. Brayboy retaliated as well as discriminated as stated in the first complaint claimed." J.A. 77. Also, in a declaration before the EEOC, Greenhill asserted, "I am a victim of race and disability discrimination." J.A. 11. These are, at best, two isolated statements in over 100 pages of documents—a potpourri of letters, declarations, e-mail exchanges, and the like—that plaintiff attached to the complaint. Although accompanying documents might clarify an otherwise ambiguous complaint, see *Stewart v. National Education Association*, 471 F.3d 169, 173 (D.C. Cir. 2006), nothing in our case law requires a district court to go on a fishing expedition for new claims.

Alternatively, amicus asserts that Greenhill's motion for reconsideration of the district court's dismissal of her complaint effectively amended the original complaint. In that motion, amidst numerous charges of malice, recklessness, and evil intent on the part of Ms. Brayboy, Greenhill asserted that she was the victim of "intentional discrimination." J.A. 212–14. Although Greenhill included numerous allegations and declarations in her pro se motion, the essence of the motion was: "Ms. Mary Brayboy in fact did breach our 1999 . . . settlement . . . ." J.A. 212. The other statements did nothing to clarify or amend the original complaint; rather, by all

appearances, they simply sought to bolster the argument that there was a breach.

Consequently, we reject amicus's suggestion that Greenhill brought a Title VII claim within the district court's jurisdiction. We thus have no occasion to consider the possible application of *Rochon*, i.e., whether, or under what circumstances, a district court might exercise supplemental jurisdiction over contract claims that otherwise fall within the exclusive jurisdiction of the Court of Federal Claims.

Amicus's second theory for avoiding the exclusive jurisdiction of the Court of Federal Claims relies on the fact that the settlement agreement explicitly precludes Greenhill from recovering damages. Because of this bar, amicus says, Greenhill can in fact obtain only equitable relief; and because the Court of Federal Claims can award only money damages (a much oversimplified proposition, as we note below), that court lacks jurisdiction to award Greenhill any relief. Amicus anticipates that if the present case were brought in the Court of Federal Claims, the government would argue that the court lacks jurisdiction on precisely these grounds. To be sure, it would be unseemly for a party to engage in a "paper charade," arguing to a district court that the Court of Federal Claims has exclusive jurisdiction over a case, only to make a contradictory jurisdictional argument once the case is transferred. See *Stovall v. United States*, 71 Fed. Cl. 696, 697–98 (2006). But there is no reason to believe that the government has behaved or will behave with such duplicity here. More to the point, the possibility of shenanigans by a party doesn't permit a court to ignore jurisdictional defects.

Jurisdiction is determined by looking to the complaint. See *Tootle v. Secretary of the Navy*, 446 F.3d 167, 174 (D.C. Cir. 2006). If Greenhill explicitly or in essence seeks money damages in excess of $10,000, jurisdiction rests exclusively

with the Court of Federal Claims. See *Kidwell v. Department of the Army, Board for Correction of Military Records*, 56 F.3d 279, 284 (D.C. Cir. 1995). Amicus's proposed approach would invert the usual order of operations—it would basically resolve the merits question of whether Greenhill is entitled to money damages and then use that result to answer the jurisdictional question. Jurisdiction, however, is an independent, preliminary issue. See *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94–95 (1998). Here, Greenhill explicitly requested $210,000 in damages. This is enough for the Court of Federal Claims to exercise exclusive jurisdiction over the case. The disposition on the merits is a separate question and one that only the Court of Federal Claims can resolve.

Amicus's third theory is a more sophisticated variation of the second. Here amicus argues that in defending against the contract damages claim the government will point to the settlement's provision against damages; whereupon the plaintiff will respond that any such ban is invalid under Title VII. Pointing to cases of the Court of Federal Claims suggesting that it has jurisdiction only over straightforward contract issues, but *not* over claims requiring an interpretation of federal statutes such as Title VII, amicus says that in reality there is no claim within the jurisdiction of the Court of Federal Claims. While the question before us is the *district court*'s jurisdiction, it is counterintuitive that the jurisdictional statutes would be so ill-coordinated as to leave perfectly sound claims orphaned. Accordingly, as we have in prior decisions, we consider the alleged deficit in the jurisdiction of the Court of Federal Claims.

It is quite true that the Court of Federal Claims has no jurisdiction over Title VII claims. According to its predecessor, the U.S. Claims Court, "Title VII . . . is the comprehensive, exclusive, and preemptive remedy for federal

employees alleging discrimination." *Fausto v. United States*, 16 Cl. Ct. 750, 752–53 (1989). The point is not in dispute—regarding actual Title VII claims. See, e.g., *Kizas v. Webster*, 707 F.2d 524, 541 (D.C. Cir. 1983) ("Title VII constitutes the exclusive remedy for claims of employment discrimination by federal employees subject to its protection . . . ." (internal quotation marks omitted)).

And there have been decisions of the Court of Federal Claims and its predecessor treating a claim based on a settlement agreement that extinguished a Title VII complaint as itself an action under Title VII rather than a contract dispute covered by the Tucker Act. See *Griswold v. United States*, 61 Fed. Cl. 458, 464–65 (2004); *Mitchell v. United States*, 44 Fed. Cl. 437, 439 (1999); *Lee v. United States*, 33 Fed. Cl. 374, 378–80 (1995); *Fausto*, 16 Cl. Ct. at 753. Last year, however, the Court of Federal Claims repudiated the logic of these opinions and drew a critical distinction between actual discrimination claims for which Title VII provides the exclusive remedy and breach-of-settlement claims that "fall[] outside the comprehensive scheme" of Title VII. *Westover v. United States*, 71 Fed. Cl. 635, 639 (2006). There the court relied on the Supreme Court and Federal Circuit precedents discussed below to conclude that settlement agreements are indeed straightforward contract claims within the purview of the Tucker Act and the jurisdiction of the Court of Federal Claims.

In *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994), the Supreme Court drew a sharp line between an action on a settlement agreement and one under a law whose alleged violation gave rise to the settlement. "The [instant] suit involves a claim for breach of a contract, part of the consideration for which was dismissal of an earlier federal suit. No federal statute makes that connection . . . the basis

for federal-court jurisdiction over the contract dispute." *Id.* at 381.

Recent Federal Circuit cases have applied the distinction, making clear that a contract dispute with the government, arising out of a matrix of statutes, does not become a suit to enforce the statutes themselves merely because its resolution may require their construction. In *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358 (Fed. Cir. 1998), the Court of Federal Claims had dismissed for want of jurisdiction a claim against the government for breach of a lease from the Bureau of Land Management to plaintiff. The government claimed the case was one for enforcement of several statutes, pointing to various issues the court would have to resolve to dispose of the lease claim. Given the confusion over this issue, the Federal Circuit's rejection of this idea deserves extensive quotation:

> [T]he fact that the court may have to interpret the Tribal Consent Act or make other determinations regarding principles of state and federal law in order to resolve the contract claim does not deprive the court of jurisdiction to decide that claim. It is often necessary to interpret or apply statutory or common law principles in order to resolve contract claims, but the fact that the resolution of a contract claim may turn on the interpretation of a statute does not deprive the Court of Federal Claims of jurisdiction over that claim.
>
> The Tucker Act gives the Court of Federal Claims "jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). That broad jurisdictional grant does not exempt contract claims that turn on the construction of statutes.

> . . . .
>
> . . . It is true, of course, that the respective rights of the parties conferred by the leases must be analyzed in light of the statutes and regulations governing the subject matter of mining on trust lands. Nonetheless, the leases are contractual undertakings by the government upon which citizens are entitled to sue in the Court of Federal Claims.

*Id*. at 1367. See also *Massie v. United States*, 166 F.3d 1184, 1189 (Fed. Cir. 1999), in which the court found that a claim to enforce a contract resolving a dispute between the plaintiff and an agency fell within the Court of Federal Claims' jurisdiction even though the agency decision, out of which the contract arose, was not subject to any kind of judicial review.

*Del Rio*'s holding that the anticipation of statutory issues cannot strip a contract case of its character of course fits the standard approach to jurisdiction over claims founded on a specified legal basis, such as that stated in 28 U.S.C. § 1491(a)(1). Under the "well-pleaded complaint" rule, for example, jurisdiction of "actions arising under" federal law, 28 U.S.C. § 1331, is resolved by looking to the legal basis of plaintiff's claim and emphatically *not* to anticipations of issues that might arise by way of defense. *Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149, 152–53 (1908). Amicus's theory of course goes further, trying to defeat jurisdiction not on the basis of a hypothesized defense but on a hypothesized response to a hypothesized defense.

Our own recent cases have been equally clear on the distinction between contract claims and their statutory context. We have held that even though Title VII might have been the basis of a settlement agreement, a breach claim is a straightforward contract dispute. *Hansson v. Norton*, 411

F.3d 231, 232 (D.C. Cir. 2005) ("This court generally treats settlement agreements as contracts subject to the exclusive jurisdiction of the Court of Federal Claims . . . ."); *Brown v. United States*, 389 F.3d 1296, 1297 (D.C. Cir. 2004) (holding that a breach of settlement claim should have been brought in the Court of Federal Claims pursuant to the Tucker Act). Consequently, we find that Greenhill's claim is a straightforward contract dispute under the Tucker Act and that jurisdiction in the Court of Federal Claims is proper.

Finally, amicus argues that we should remand the case to the district court to give Greenhill an opportunity to amend her complaint and seek damages below the Little Tucker Act's $10,000 ceiling; see 28 U.S.C. § 1346(a)(2). But in support of the proposal amicus cites only a case where the plaintiff had, in district court, made an effort (albeit a defective one) to waive the excess over $10,000, *Goble v. Marsh*, 684 F.2d 12, 17 (D.C. Cir. 1982), and another case in which we found that plaintiff's trial-court waiver was adequate, *Stone v. United States*, 683 F.2d 449, 454 (D.C. Cir. 1982). Greenhill made no trial-court effort to waive. We note in this connection that when asked at oral argument whether Greenhill was ready to drop her damages claim, amicus answered unequivocally no. Oral Arg. at 2:21 ("Q: Does this mean that Ms. Greenhill is withdrawing her claim for money damages? A: No, Your Honor, it does not mean that she is withdrawing her claim for money damages . . . .").

Insofar as Greenhill believes that jurisdiction in district court would open up to her a broader array of non-monetary remedies than would be available in the Court of Federal Claims, we observe only that the validity of that belief is not so clear. The Tucker Act explicitly provides for equitable relief:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.

28 U.S.C. § 1491(a)(2).

This has, to be sure, been somewhat narrowly construed. See, e.g., *Miller v. United States*, 67 Fed. Cl. 195, 201 (2005) (noting the court's power to grant "incidental" reinstatement to service); *French v. United States*, 42 Fed. Cl. 49, 52 (1998) (noting the court's power to correct official records if plaintiff would be entitled to damages "if the record is corrected"). Similarly, our own cases have found very sharp constraints on district court jurisdiction to grant equitable relief on contract claims against the government. See *Transohio Savings Bank v. Director, Office of Thrift Supervision*, 967 F.2d 598, 607–13 (D.C. Cir. 1992); *Sharp v. Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986). But compare *Land v. Dollar*, 330 U.S. 731 (1947) (finding, where plaintiffs sued agents of the United States, who had allegedly acted in excess of their public authority, to recover property that was allegedly due them under their contract with the United States, the claim sounded in tort and was within the jurisdiction of the district court). We take no position on which system is in practice less forthcoming.

* * *

Because we conclude that Greenhill has sought over $10,000 in damages and that the cause of action constitutes a "claim against the United States founded . . . upon an[]

express or implied contract with the United States," 28 U.S.C. § 1491(a)(1), the Court of Federal Claims has exclusive jurisdiction. We remand the case to the district court with instructions to transfer the case to the Court of Federal Claims pursuant to 28 U.S.C. § 1631.

*So ordered*.